**SO ORDERED.**

**SIGNED this 04 day of January, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

LARRY LILL MEAD, JR. and  CASE NO. 12-01222-8-JRL
HELENA LYNN MEAD,

 CHAPTER 13

 DEBTORS.

___

### ORDER

This matter came before the court on the debtors' objection to proof of claim #2, filed by the Internal Revenue Service. A hearing was held on the matter on December 12, 2012, in Wilmington, North Carolina. The issue in this case, a matter of first impression for this court,[1] is whether the Internal Revenue Service's filing of a proof of claim for the original amount of tax liability rather than the prepetition compromise amount violates the anti-discrimination provision of 11. U.S.C. § 525(a).

### *Background*

Larry and Helena Mead, the debtors, filed a voluntary petition under chapter 13 of the Bankruptcy Code on February 16, 2012. Prior to filing for bankruptcy protection, on December

___

[1] In fact, the court has been unable to find any case that addresses the exact issue presented here.

28, 2010, the debtors made an offer in compromise to the Internal Revenue Service. The terms of the offer in compromise provided that the debtors would pay four thousand dollars to compromise their income tax liabilities plus any interest, penalties, additions to tax, and additional amounts required by law for the tax years of 1998 through 2009. Payment would be in four installments of one thousand dollars each. The first payment would be made one month after acceptance; the second payment would be made five months after acceptance; the third, nine months after acceptance; and the fourth would be made thirteen months after acceptance. In a letter dated October 13, 2011, the Internal Revenue Service accepted the offer in compromise. The Internal Revenue Service stated that the date of acceptance was the date on the letter. The acceptance of the offer in compromise occurred four months before the debtors filed their bankruptcy petition.

Shortly after the debtors filed for bankruptcy protection, on February 27, 2012, the Internal Revenue Service filed a proof of claim in the debtors' case. The claim included a secured claim in the amount of $21,033.15, which the Internal Revenue Service claims as a secured claim for the years of 2003 and 2004 and a general unsecured claim in the amount of $83,289.35.[2]

In their objection to the Internal Revenue Service's claim, the debtors argue that the amount of tax liability to be paid to the Internal Revenue Service in their chapter 13 plan should

---

[2]The claim also included an unsecured priority claim in the amount of $20,136.23 based on the tax periods of 2010 and 2011. In their objection to the claim, the debtors stated that they have filed their federal 1040 tax return for 2011 and with $0.00 due for the 2011 tax year, the unsecured priority claim should be reduced to $782.03, the amount due for 2010. The Internal Revenue Service has received the 2011 return and will amend its claim to show no tax is owed for that year.

be $3,782.03. This amount reflects the four thousand dollar compromise less the first one thousand dollar payment which the debtors made pursuant to the compromise's terms, plus the 2010 priority claim not part of the compromise. The debtors were not in default under the terms of the compromise on the date of the filing of the bankruptcy petition. Therefore, the debtors contend, the total amount of tax liability for 1998 to 2009 must be the amount due under the compromise. To find otherwise, the debtors argue, would allow the Internal Revenue Service to disregard a prepetition compromise solely on the grounds that the taxpayers are now in bankruptcy, which would be a violation of the anti-discrimination provision of 11 U.S.C. § 525(a).

      The Internal Revenue Service sees this as a case where the anti-discrimination provision is not at issue because the terms of the agreement provide for the avoidance of such a compromise when a taxpayer enters bankruptcy. Acknowledging that it accepted the debtors' offer in compromise covering the 1998 to 2009 tax years, the Internal Revenue Service argues that such compromises are voided when a taxpayer files for bankruptcy protection. Therefore, when the Internal Revenue Service filed its claim, it was not revoking a contract in a discriminatory manner, and was not triggering the anti-discrimination provision, because the contract provided that the pre-compromise amount could be claimed when the debtor entered bankruptcy.

      To support this contention, the Internal Revenue Service refers to page 3, section 8 "Offer Terms" of IRS Form 656: "Offer in Compromise," paragraph (h) which states:

> The IRS will not remove the original amount of my tax debt from its records until I have met all terms and conditions of this offer. Penalty and interest will continue to accrue until all payment terms of the offer have been met. If I file bankruptcy before the terms are fully met, any claim the IRS files in the

bankruptcy proceedings will be a tax claim.[3]

The Internal Revenue Service argues that this provision allows it to file a tax claim in the original amount of tax, penalty, and interest that would be due at the time of the bankruptcy filing as if no compromise had been entered. The Internal Revenue Service reaches this conclusion by reading the term "tax claim" in the above paragraph to mean the full amount owed prior to any compromise between the Internal Revenue Service and the taxpayer.

### *Discussion*

Section 7122 of the Internal Revenue Code authorizes the Secretary of the Treasury, or his delegate, to "compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense." The Internal Revenue Manual states that the Internal Revenue Service's goal when accepting an offer in compromise is "to achieve collection of what is potentially collectible at the earliest possible time and at the least cost to the Government." Internal Revenue Manual 5.8.1.1.3. The Internal Revenue Service's "acceptance of an offer to compromise will conclusively settle the liability of the taxpayer specified in the offer." Treas. Reg. § 301.7122-1(e)(5). Neither party can reopen the case to determine the issue of liability except in cases where false information was supplied, the ability to pay or the assets of the taxpayer were concealed, or a mutual mistake sufficient to set aside or reform the agreement is discovered. Id.; Internal Revenue Manual 5.8.9.2. However, an accepted offer can reach a potential default status if the taxpayer fails to make timely payment of the amount due based on the terms of the offer or if the taxpayer has not

---

[3]The debtors used form 656 (rev. March 2009). The language relied on by the Internal Revenue Service appears on the debtors' form 656 on page 2, section V, paragraph (i).

adhered to the compliance provisions of the offer. Internal Revenue Manual 5.8.9.3. While the Internal Revenue Manual does not have the force of law that the Internal Revenue Code or the Treasury Regulations carry, the principles enunciated by the manual are simple contract principles.

The Bankruptcy Code prohibits governmental discrimination based solely on the fact that the debtor is in bankruptcy. The pertinent section of the Code provides:

> *[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to*, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, *a person that is or has been a debtor under this title* or a bankrupt or a debtor under the Bankruptcy Act [former 11 USC §§ 1 et seq.], or another person with whom such bankrupt or debtor has been associated, *solely because such bankrupt or debtor is or has been a debtor under this title* or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a) (emphasis added). The legislative history evidences a congressional goal of prohibiting bankruptcy-based discrimination "that can seriously affect the debtors' livelihood or fresh start." H.R. Rep. No. 95-595, at 367 (1977).

The question of whether the Internal Revenue Service's policy of not considering an offer in compromise made by a taxpayer already in bankruptcy violates § 525 has been addressed by several courts. The Bankruptcy Court of the Southern District of West Virginia found the policy of refusing to consider an offer in compromise submitted by a taxpayer in bankruptcy to be a violation of the anti-discrimination provision of the Bankruptcy Code. Mills v. United States (In re Mills), 240 B.R. 689 (Bankr. S.D. W. Va. 1999). Finding that while the Internal Revenue Service could not be compelled to accept an offer in compromise, the court found that

the refusal to even consider an offer solely because the debtor was in bankruptcy unlawfully discriminated against such debtor. Id. At 695-698. Other courts have found that the right to have an offer in compromise considered is not "a license, permit, charter, franchise, or similar grant" under § 525(a) and therefore the refusal to consider such an offer based on the fact that a taxpayer is a debtor in bankruptcy is not violative of § 525; however, these courts have directed the consideration of such offers through the court's broad equitable powers under 11 U.S.C. § 105(a). See Holmes v. United States (In re Holmes), 298 B.R. 477 (Bankr. M.D. Ga. 2003), *aff'd sub nom.* IRS v. Holmes, 309 B.R. 824 (M.D. Ga. 2004); Macher v. United States, 2003 WL 23169807 (Bankr. W.D. Va. May 29, 2003) *aff'd sub nom.* United States v. Macher (In re Macher), 303 B.R. 798 (W..D. Va. 2003). Other courts have rejected both the § 525 and § 105 bases for compelling the consideration of an offer in compromise by a debtor. See In re Uzialko, 339 B.R. 579 (Bankr. E.D. Pa. 2006); 1900 M. Resturant Assocs., Inc., v. United States (In re 1900 M Resturant Assocs., Inc.), 319 B.R. 302 (Bankr. D.D.C. 2005).

      The case at hand is distinguishable on the facts from the above cases where the taxpayers were already debtors in bankruptcy at the time they made their offers in compromise to the Internal Revenue Service. In the case at hand, the debtors had made, and the Internal Revenue Service had accepted, the offer in compromise prior to the debtors filing for bankruptcy protection. Here, there was already a contractual agreement in place between the Internal Revenue Service and the debtors compromising the tax liability.

      If courts have divided on the issue of whether the refusal to consider a postpetition offer in compromise violates the anti-discrimination provision of the Bankruptcy Code, the factual scenario in this case is a more persuasive instance to find unlawful discrimination by a

governmental unit. Here, there was already a compromise in place and due solely to the debtors' subsequent bankruptcy filing, the Internal Revenue Service refused to honor that agreement. Although abrogation of contract rights is not explicitly listed in the prohibited discriminatory acts mentioned in § 525, the legislative history of the section makes it clear that the list is not meant to be exhaustive. H.R. Rep. No. 95-595, at 367 (1977) ("The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination."). Contract rights clearly come within the purview of § 525. See Exquisito Servs., Inc., v. United States (In re Exquisito Servs., Inc.), 823 F.2d 151 (5th Cir. 1987) (government unit's refusal to renew food service contract due to debtor's bankruptcy was discrimination prohibited by § 525); In re Son-Shine Grading, Inc., 27 B.R. 693 (Bankr. E.D.N.C. 1983) (disqualification of debtor from bidding on government contracts solely because of debtor's status as a bankruptcy debtor violated § 525); Marine Electric Railway Prod. Div., Inc. v. New York City Transit Auth. (In re Marine Electric Railway Prod. Div., Inc.), 17 B.R. 845 (Bankr. E.D.N.Y. 1982) (same); Coleman Am. Moving Servs., Inc. v. Tullos (In re Coleman Am. Moving Servs., Inc., 8 B.R. 379 (Bankr. D. Kan. 1980) (same).

The Internal Revenue Service characterizes the nature of events differently. Rather than a discriminatory revocation of an agreement, violative of § 525, the Internal Revenue Service posits that the agreement itself allowed the Internal Revenue Service to effectively modify the compromise and seek the original tax liability owed prior to the compromise. The agreement's conditions provide that if the debtors filed for bankruptcy before the terms and conditions of the compromise were completed, then the Internal Revenue Service could filed a tax claim in the bankruptcy proceeding. The Internal Revenue Service argues that "tax claim" read in

conjunction with the rest of the conditions means the initial, pre-compromise tax liability. This court notes that "tax claim" could just as easily mean tax claim in the amount of what is owed under the compromise. If the Internal Revenue Service intended tax claim to mean tax claim in the amount of the original tax liability, the chosen language did not explicitly say so. Throughout the agreement the following terms are used: "the full amount of liability under this offer," "the original amount of the liabilities," and "the amount of liability." Certainly the Internal Revenue Service had the vocabulary to state the condition with more clarity and precision.

The Internal Revenue Service concedes that the provision is ambiguous as it is uncertain and capable of multiple interpretations. When a court is called upon to interpret contract terms, general contract principles dictate that the contract should be interpreted in a way that avoids an illegal result. Huttenstine v. Mast, 537 F.Supp.2d 795, 801 (E.D.N.C. 2008). An agreement which violates federal law is illegal and void.

Here, if the court was to credit the Internal Revenue Service's interpretation of the condition, the contract would run afoul of federal law. If tax claim meant pre-compromise amount then the condition that allowed the Internal Revenue Service to disregard the compromise and attempt to collect the entire amount simply because a taxpayer was now a debtor in a bankruptcy proceeding is itself a violation of the anti-discrimination provisions of § 525. This contract term allows the Internal Revenue Service to treat a debtor differently from a non-debtor taxpayer simply because the debtor is in bankruptcy. Given the option of either interpreting the contract terms to violate 11 U.S.C. §. 525 or to conform with federal law, the choice is clear. The condition which provides that the Internal Revenue Service can file a tax

claim in the event that the taxpayer files bankruptcy means that the Internal Revenue Service can file a tax claim in the amount owed under the compromise, not the original pre-compromise amount.

## *Conclusion*

Congress intended to prohibit discrimination against a debtor in bankruptcy when the discrimination is based solely on the debtor's bankruptcy filing. Here, the Internal Revenue Service has promoted a contract interpretation where the treatment of a taxpayer's vested contract rights under a compromise differ depending solely on whether the taxpayer subsequently files for bankruptcy. If the taxpayer stays out of bankruptcy, the Internal Revenue Service can only collect the amount of the compromise. However, if the taxpayer enters bankruptcy after a compromise, the Internal Revenue Service can file a claim for the pre-compromise amount. This is a clear example of governmental discrimination against a person based solely on the fact that he is a debtor in bankruptcy. This court finds that this interpretation of the compromise agreement violates 11 U.S.C. § 525(a).

The logical interpretation, which would not render the contract void and illegal, is that if the taxpayer enters bankruptcy after the compromise has been entered but before all of the terms of the contract have been satisfied, i.e., the compromise has not yet been paid off, the Internal Revenue Service can file a proof of claim in the bankruptcy proceeding for the unpaid amount of the compromise. Accordingly, the debtors' objection to claim is **GRANTED**.

## END OF DOCUMENT